The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Lorrie L. Dollar. The appealing party has shown good ground to reconsider the evidence. Having reconsidered the evidence, the Full Commission reverses the Deputy Commissioner's denial of benefits and enters the following Decision and Order.
* * * * * * * * * * * * * * *
EVIDENTIARY RULING
The testimony regarding the juvenile proceedings against Nathan and Nathaniel Futrell is stricken from the record in this case.
* * * * * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
STIPULATIONS
1. Plaintiff, LaShonda Futrell was a seven year old female and a student at Southwestern Bertie Elementary School on the relevant dates in this matter.
2. Elizabeth Futrell, mother of plaintiff is a duly qualified guardian ad litem of plaintiff.
3. On 18 April 1991, the date of the incident giving rise to this claim, Linda Megill was the driver of a public school bus for special students. Her salary was paid from the State Public School Fund for the Bertie County Board of Education.
* * * * * * * * * * * * * *
The Full Commission rejects the findings of fact found by the Deputy Commissioner and finds as follows:
FINDINGS OF FACT
1. Plaintiff was an educable-mentally handicapped student in the Bertie County School System on the relevant dates in this matter and was assigned to ride a school bus established for special need/exceptional students. At that time plaintiff's full scale intelligence quotient placed her in the lower range of educable mentally handicapped children and was considered to have a mental age of four (4).
2. The special needs bus usually carried thirteen students ranging from seven to fourteen years of age and with a variety of mental and physical handicaps. Among the other students assigned to plaintiff's bus were three students classified as behavioral-emotionally handicapped. Children identified as behavioral-emotionally handicapped are often discipline problems and difficult to control.
3. Prior to 18 April 1991 specific problems on the special needs bus included running, excessive talking, and fighting.
4. Each of the three students classified as behavioral-emotionally handicapped who rode plaintiff's bus were known to be discipline problems. Two were Nathan and Nathaniel Futrell, who were thirteen (13) year old twin cousins of plaintiff as of 18 April 1991. Some time prior to 18 April 1991 Nathan and Nathaniel had gone to the same school. However, because their behavior had become uncontrollable when placed together, Nathan and Nathaniel had thereafter been assigned to separate schools and were so assigned as of the date in question. Despite this known potential for uncontrollable behavior, these same two students continued to ride the special needs bus together, along with plaintiff. The third student so classified who rode the special needs bus was Richard Daughtry, age eleven (11), who was also classified as educable and mentally handicapped.
5. The special needs bus is shorter that a standard school bus with space at the rear for wheelchair bound students. It is equipped with a rear-view mirror which if properly used by the driver would allow them to view the students while in their seats or in the aisle.
6. Ms. Gwen Peele, the regular driver for plaintiff's bus, was out of work on 18 April 1991. On that day, Ms. Linda Megill was assigned as a substitute driver for the special needs bus. Ms. Megill was an experienced driver, having driven school buses for Bertie County for thirteen to fourteen (13-14) years. While county officials would not admit to any incorrect behavior on the part of Ms. Megill, following the incident on 18 April 1991 it was the opinion of Bertie County School officials that she was no longer appropriate to drive the special needs bus or any other bus for the county.
7. As a driver of the special needs bus in Bertie County, Ms. Megill had received some special training. Pursuant to the county policy in effect at that time, Ms. Megill had been informed of the type of students assigned to the special needs bus along with being given a general idea of their behavioral and/or mental classifications.
8. Gwen Peele, who as the regular driver had also been generally informed of the type of students assigned to the special needs bus, required the students to sit in assigned seats when she operated the bus. This would allow her to better observe the students and add to a controlled environment. Pursuant to the assigned seating plan used by Ms. Peele, plaintiff was assigned to sit directly behind her.
9. On 18 April 1991, having similar knowledge to that of Ms. Peele regarding the type of students on board, Ms. Megill failed to require the six (6) students riding that day to sit in their assigned seats. On that date, plaintiff was permitted to sit near the rear of the bus instead of her normal seat near the driver. Kenneth Lee, another student, sat on the fourth row of seats up from the wheelchair area on the opposite side from plaintiff. Additionally, one (1) of the six (6) students on board the bus on 18 April 1991 was wheel-chair bound and therefore sat in the rear portion of the bus.
10. Ms. Megill was very familiar with the special needs bus having driven it on prior occasions. During her direct testimony, when the students' names were recited and she was asked if she could recall those students, Ms. Megill responded affirmatively. The Full Commission finds that it is reasonable to infer from the evidence that Ms. Megill was sufficiently familiar with the children who rode the special needs bus to have knowledge of the potential for behavioral problems.
11. On 18 April 1991, as the bus proceeded along a curvy dirt road, another passenger on the bus, Kenneth Lee, observed plaintiff on the floor with three male students surrounding her. The three other students were Nathan and Nathaniel Futrell, plaintiff's cousins, along with Richard Daughtry. Nathan Futrell had inserted his penis into the plaintiff's mouth while Nathaniel and Richard fondled plaintiff's breasts and felt between her legs.
12. Kenneth Lee reported that incident to his mother and to Ms. Peele, the regular bus driver, on or about 22 April 1991. Ms. Peele reported the incident to her husband, William Peele, Jr., an assistant principal at Southwestern Bertie Middle School. After the incident was reported to Mr. Peele the matter was finally investigated.
13. The Full Commission finds it reasonable that someone who had gone through what plaintiff had would find the experience difficult to express. Therefore, it is reasonable that plaintiff did not tell her mother or anyone what occurred on 18 April 1991.
14. Kenneth Lee also attempted to inform Ms. Megill of the incident and got up from his seat to do so. However, despite admitting to the investigating office that she had observed "some activity" in the back of the bus where the children were located, Ms. Megill did nothing to investigate what Kenneth Lee had told her and in fact instructed him to sit down and be quiet.
15. In her testimony, Ms. Megill attempts to justify her behavior by noting that she could not observe the students in the mirror and be driving the bus simultaneously. However, the testimony of the investigating officer indicates that Ms. Megill did in fact observe activity in the back of the bus and despite her later protestations also show that it was possible to drive the bus while glancing quickly in the mirror to observe where the passengers were located. The Full Commission finds the testimony of Ms. Megill regarding her recollection of events on 18 April 1991 as not credible and instead relies on the credible testimony of Detective Sergeant Donald Cowan of the Bertie County Sheriff's Department who testified as to what Ms. Megill informed him as the investigating officer on the day of the actual incident.
16. On 18 April 1991, Ms. Linda Megill was under a duty to maintain adequate and reasonable safety precautions and to protect the children on the bus from unreasonable risks of harm during her operation of the special needs bus.
17. Given the behavioral problems on this bus and the extreme behavioral problems of the three male students involved, it was reasonably foreseeable that without proper supervision the children on the special needs bus would face an unreasonable risk of harm.
18. The Full Commission finds that had she properly used the mirror and otherwise properly monitored the students during her operation of the special needs bus on 18 April 1991, Ms. Megill reasonably could have observed the passengers missing from their seats and located in the back of the bus while plaintiff was being sexually abused. It is further noted that one student was wheel-chair bound and in the very rear section of the bus.
19. On 18 April 1991, Ms. Linda Megill, as defendant's employee, breached her duty to plaintiff to maintain adequate and reasonable safety precautions and to protect against unreasonable risks of harm while in operation of the special needs bus, by failing to properly monitor and control the special needs students and by failing to properly investigate known improper activity on board.
20. As a result of Ms. Megill's breach of her duty to plaintiff and the incident on 18 April 1991, plaintiff sustained wide ranging mental and emotional injuries. Plaintiff was afraid of going to sleep and became a discipline problem. She had temper tantrums, faked epileptic seizures, and was aggressive toward her mother. According to her mother, plaintiff's entire personality was changed following the attack and she ceased to interact with others. Mrs. Futrell sought the assistance of counselors at Roanoke-Chowan Human services Center for plaintiff
* * * * * * * * * * * * * * *
Based upon the findings of fact the Full Commission concludes as follows:
CONCLUSIONS OF LAW
1. Plaintiff has proven, by the greater weight of the credible evidence of record, that defendant Bertie County Board of Education by and through its employee-agent, school bus driver Ms. Linda Megill, was negligent in the operation of the special needs school bus on 18 April 1991 and that plaintiff's injuries were the proximate result of defendant's negligence. G.S. § 143-291 etseq.
2. As a result of the defendant's negligence on 18 April 1991, plaintiff has sustained numerous debilitating mental and emotional injuries, for which she is entitled to $20,000.00 as damages to be paid by defendant. Id.
* * * * * * * * * * * * * * *
Based on the foregoing findings of fact and conclusions of law, the Full Commission reverses the holding of the Deputy Commissioner and enters the following:
AWARD
1. Subject to the attorney's fee of $5,000.00 approved for plaintiff's counsel which shall be deducted and paid directly thereto, defendant shall pay $20,000.00 to plaintiff's guardian adlitem, her mother Ms. Elizabeth Futrell, for the use and benefit of Lashanda Futrell, the minor child, as compensation for the injuries she sustained as the result of defendant's negligence. Said funds shall be paid by defendant to the Clerk of Superior Court of Bertie County to be disbursed as the law provides on behalf of the minor child.
2. Defendant shall pay all costs due this Commission.
 S/ ____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
S/ ___________________ BERNADINE S. BALLANCE COMMISSIONER
S/ _______________ COY M. VANCE COMMISSIONER